## THE OTIS COMPANY v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### Division One, December 12, 1892.

1. **Contract of Affreightment:** LAW OF PLACE. A contract of affreightment is governed by the law of the place where it is made, unless it appears it was otherwise intended by the parties.

2. **Practice:** INSTRUCTION: HARMLESS ERROR. A finding of the trial court will not be reversed for error in refusing an instruction, where it appears that the court placed its finding on a theory not embraced in such refused instruction.

3. **Negligence:** RAILROAD: ESCAPE OF FIRE FROM LOCOMOTIVE. While the sole fact of fire escaping from a passing railroad locomotive and destroying the property of another is sufficient to warrant an inference of negligence, either in the equipment of the engine or in its management, yet the proof of such fact makes out only a *prima facie* case of negligence.

4. ———: ———: ———. The attending facts in this case *held* not to justify the conclusion that the fire escaped from the locomotive.

5. **Railroad:** LOSS OF PROPERTY: FIRE: NEGLIGENCE. Where, in an action by a shipper of cotton against a railroad to recover damages for the loss of the cotton from fire, the evidence shows that the carrier after receiving the property placed it in the hands of a compress company to have it compressed, and also careless conduct on the part of the compress company in the use of fire about the cotton, and that, too, on the very day of the conflagration, *held*, that the conclusion of the compress company's negligence is a natural and reasonable one.

6. ———: ———: AGENCY. Where a railway company in a bill of lading for the shipment of cotton reserves the right to have it compressed, and subsequently places it in the hands of a compress company for that purpose, such company becomes the agent of the railway company, and the latter is liable for its destruction or damage through the negligence of the compress company.

7. ———: ———: ———: BURDEN OF PROOF. Where, in an action against a railroad for the loss of property from fire, it is agreed that the bill of lading contains an exception exempting the company from liability as to loss by fire, the plaintiff to entitle him to recover must show that the fire was the result of the company's negligence, and the burden of proving such fact rests on him. (*Witting v. Railroad, 101 Mo. 631, approved.*)

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Jackson & Montgomery* for appellant.

(1)   The bill of lading being a through bill from Texas to Massachusetts the Texas statute did not apply. The defendant could lawfully restrict its liability as provided in the bill of lading. *Ryan v. Railroad*, 65 Tex. 13; *Railroad v. Adams*, 78 Tex. 372; *Railroad v. Sherwood*, 19 S. W. Rep. (Tex.) 455.   The same rule prevails in Massachusetts, the destination of the shipment.   *School District v. Railroad*, 100 Mass. 505. And also in Missouri.   *Ball v. Railroad*, 83 Mo. 574. There was, therefore, error in refusing defendant's third instruction.   (2)   The court erred in refusing defendant's second instruction.   The consignor of goods has an implied authority from the consignee to stipulate as to the terms of transportation.   Redfield on Carriers, sec. 52.   (3)   The court erred in refusing the defendant's first, fourth and fifth instructions. The defendant can only be held liable in this case on the ground that the fire which destroyed plaintiff's cotton was the result of defendant's negligence, and the burden of proving such negligence is on plaintiff. *Whitworth v. Railroad*, 83 N. Y. 413; *Witting v. Railroad*, 101 Mo. 631.   There is no evidence in this case from which negligence on the part of any agent or employe of defendant can be inferred.   The fire was an accident, at least, so far as the evidence indicates. *Whitworth v. Railroad, supra;* Ray on Negligence of Imposed Duties, p. 142; *Haley v. Railroad*, 69 Mo. 614; *Kenney v. Railroad*, 70 Mo. 243; *Redmond v. Railroad*, 76 Mo. 550; *Catron v. Nichols*, 81 Mo. 80; *Peck v.*

*Railroad*, 31 Mo. App. 123; *Alexander v. Railroad*, 37 Mo. App. 609. (4) The court erred in giving the second and third instructions for plaintiff, and in refusing the defendant's sixth and seventh. The plaintiff's second and third ones are contradictory and leave it uncertain upon which theory the finding was made, nor do they state any measure of the degree of care required. The instructions, as a whole, authorize a recovery on account of want of ordinary care by the compress company. This was error. The bill of lading stipulated that the cotton might be compressed, but that defendant should not be liable for loss by fire, nor for any loss unless it occurred while the cotton was in the actual custody of defendant on its railroad. For the foregoing reasons the finding and judgment were against the law and the evidence, and were for the wrong party, and on these grounds the new trial should have been granted, and for the error in refusing it the case should be reversed.

*Fred. Wislizenus* for respondent.

(1) Under the clause in the bill of lading, "the carriers reserve to themselves the privilege of compressing all cotton signed for on this bill of lading," the defendant carrier became liable for the negligence of the compress company with whom it contracted for the compression of plaintiff's cotton, held under the bill of lading. *Deming v. Merchants, etc.*, 90 Tenn. 306. (2) The trier of facts may, from the fact of an accident taken in connection with surrounding facts, draw reasonable inferences as to the existence of negligence, and as to the causal connection of negligence with the acciden*. Particularly is this true when the party whom it is sought to charge with negligence is in control of the premises where the event happened, and

the accident is such as, in the ordinary course of things, does not occur without negligence. *Buesching v. St. Louis Gas Light Co.*, 73 Mo. 219; *Lemon v. Chanslor*, 68 Mo. 341; *Hipsley v. Railroad*, 88 Mo. 352; *Furnish v. Railroad*, 102 Mo. 453; *Kenney v. Railroad*, 70 Mo. 251; *Frank v. City of St. Louis*, 19 S. W. Rep. 938; Wharton on Evidence, sec. 871; Shearman & Redfield on Negligence, secs. 59, 60; *Kearney v. London, etc.*, L. R. 6 Q. B. 759; *Byrne v. Boudle*, 2 H. & C. 722; *Scott v. London Dock*, 3 H. & C. 596; *Lyon v. Rosenthal*, 11 Hun, 48; *Cummings v. National Furnace Co.*, 60 Wis. 612; *Mullen v. St. John*, 57 N. Y. 567; *Thomas v. Tel. Co.*, 100 Mass. 156; *Stokes v. Saltonstall*, 13 Peters, 181; *Railroad v. Pollard*, 22 Wall. 342; *Tuttle v. Railroad*, 48 Iowa, 236; *Edgerton v. Railroad*, 39 N. Y. 227; *Eagle Packet Co. v. Defries*, 94 Ill. 601; *Steers v. Liverpool*, 57 N. Y. 1; *Kist v. M. L. S. & W.*, 46 Wis. 491. (3) *First.* This bill of lading must be construed as a Texas contract, not only because it was made in that state, but also because the provisions as to connecting carriers show that it must be so treated. Bigelow's note to star page 377 of Story's Conflict of Laws [8 Ed.]. *Second.* Under Texas law the restriction as to liability for loss by fire is void. Texas Civil Statutes, art. 278, tit. 13.

BLACK, J.—Plaintiff, a corporation organized under the laws of the state of Massachusetts, brought this suit to recover damages for the loss of certain cotton delivered to defendant for shipment. It is alleged that the cotton was lost by the carelessness of defendant.

The answer sets up a clause in the bill of lading exempting defendant from liability in case of loss or damage by fire, and avers that the cotton was destroyed from such cause without fault or negligence on the part of the defendant.

VOL. 112—40

The reply pleads a statute of the state of Texas, making void, so the plaintiff insists, the exempting stipulation so pleaded in the answer.

The court, sitting as a jury, found for the plaintiff, and assessed its damages at the agreed value of the cotton.

It was agreed on the trial that the plaintiff, through its agents, delivered to defendant at McKinney in the state of Texas one hundred bales of cotton to be shipped to Ware, in the state of Massachusetts, pursuant to a bill of lading which is made a part of the agreed facts; that defendant carried the cotton to Greenville in the state of Texas to have it compressed, and that sixty-two bales were destroyed by a fire, which occurred at the compress on the fourteenth of November, 1889.

The bill of lading provides that the cotton may pass through the custody of several carriers, and then follows this language: "Neither of said carriers, nor this company, shall be liable for loss or damage of any kind, occasioned by delays from any cause or by change of weather, or for loss or damage by fire, or for loss or damage on seas, lakes, canals or rivers, * * * The carriers reserve to themselves the privilege of compressing all cotton signed for on this bill of lading."

The evidence discloses the following facts: The structure used by the compress company consisted of a large shed closed on the north, west and south sides, but open on the east side, and a platform three hundred feet long, running north and south, and extending out east from the open side of the shed for a width of forty-five feet to a railroad track. This compress track, as it is called, was full of cars loaded with cotton at the time of the fire. The narrow-gauge cars were open, and the cotton on them exposed. The standard-gauge cars, with one exception, were closed box cars. There were some two thousand bales in the shed and on the platform.

The men at work for the compress company moved a bale of uncompressed cotton from this open standard-gauge car to the platform, and thence by a truck for a distance of one hundred and fifty feet to the shed, and there placed it on one end. In five minutes thereafter fire was discovered in this bale, just above the lower end. The fire spread throughout the shed in the space of ten minutes. Though the machinery of the press was operated by steam, still it appears the boiler fires were allowed to go down on Saturday and had not been lighted since that time. The fire occurred at about 4:00 P. M. on the following Monday. Thus far there is no substantial conflict in the evidence.

The evidence tends to establish these further facts: That there were five or six railroad tracks fifty or sixty feet east of the compress track, all in use; that two engines were used for switching purposes, one a standard and the other a narrow gauge, but both operated by defendant; and that these engines were often on these tracks and near the compress. The more specific evidence is that the compress track was not used for switching purposes; that standard-gauge cars were set in on the north end, and narrow-gauge cars at the south end; that both engines were supplied with good spark arresters, and would not throw sparks far enough to catch cotton fifteen feet distant, and that they had not been on the compress track for an hour or two before the fire.

The compress company had in its employ some twenty or thirty persons, mostly negroes. One or two witnesses say smoking was not allowed around the premises; but there is much evidence to the contrary. Mr. Downer, who was defendant's freight agent at Greenville at the time of the fire, testified: It was a common thing to see the superintendent and clerks smoking in the office located in one part of the shed.

I remember one instance of a negro employe carrying parlor matches stuck behind his ear, and of calling Superintendent Murphy's attention to it. The floor in the vicinity of the press was usually more or less covered with loose cotton. On the forenoon of the day of the fire I saw Superintendent Murphy on the east side of the engine room on the compress platform coming towards me with a cigar lighted in his hand. He was on top of some bales, and was putting out his cigar as he approached me. I spoke to him about it, and he said there was no fire in the cigar. Saw Chief Clerk Mattox smoking under the compress shed. There was cotton all around on these occasions. A few barrels of water, standing around at different places, constituted the only available preparations made to extinguish fires.

1. The rule in respect to contracts of affreightment is that the contract is to be governed by the law of the place where the contract is made, unless the parties have some other law in view at the time of making the contract. Hutchinson on Carriers [2 Ed.] sec. 144a. The question whether the parties have contracted in view of the law of the place other than that where the contract was made is often a difficult one. It is a question which need not be considered in this case; for the supreme court of Texas has held that the statute set up in the reply does not apply to interstate or foreign shipments, and that by its terms it applies only to shipments purely domestic, such as begin and end in that state. *Railroad v. Sherwood*, 19 S. W. Rep. 455. We accept this ruling as the correct exposition of the law for all the purposes of this case. It follows that the statute pleaded by the plaintiff does not apply to the contract evidenced by this bill of lading.

The only difficulty on this branch of the case is to determine whether the trial court disregarded this

statute.   That court gave, at the request of the plaintiff, two instructions to the following effect:   *First*, if the fire at the cotton compress was caused by want of ordinary care on the part of the defendant, or on the part of the compress company, then the finding should be for plaintiff; *second*, if the fire was caused by want of ordinary care on the part of the defendant, the finding should be for plaintiff.   But the court refused an instruction, asked by defendant, that the bill of lading, being a through one from Texas to Massachusetts, should be construed by the laws of this state.

It is singular the defendant did not ask a pointed instruction to the effect that the Texas statute pleaded did not apply to the bill of lading sued upon, instead of saying that the bill of lading should be construed by the laws of Missouri; for the contract was not made in this state, nor does it appear that it was to be performed in whole or in part in this state.   As the defendant could limit its common-law liability by contract under the laws of this state, it is fair to say that the refused instruction asserts the proposition that the Texas statute had no application to the case in hand. It should have been given.   But from the instructions given at the request of the plaintiffs, it appears the court placed its finding for plaintiff on the ground that the cotton was lost by reason of the negligence of the defendant or of the cotton compress company.   We understand counsel on both sides to agree that this was the ground on which the court rendered judgment for plaintiff.   The judgment should, therefore, not be reversed for the error in refusing the defendant's instruction before mentioned.

2.   There is no doubt but a common carrier may, by contract, relieve himself from his common-law liability as insurer of the safety of the goods delivered to him for transportation; but it is equally well settled

that the carrier cannot, even by express contract, exempt himself from liability for the negligence of himself or his servants. The real questions in this case are, therefore, *first*, whether there is evidence tending to show that the fire and consequent destruction of the cotton was the result of negligence on the part of the defendant or the compress company. And, *second*, whether the defendant is liable to plaintiff for such negligence on the part of the compress company.

There is, in our opinion, no evidence of such negligence on the part of the defendant, as distinguished from negligence of the compress company. The negligence, if any there was on the part of defendant, must have been in so operating the engines, or in failing to supply them with proper spark arresters, that sparks from them caught in the bale of cotton and set it on fire. It is now well settled in this court that the sole fact of fire escaping from a passing engine and destroying the property of another is sufficient to warrant an inference of negligence, either in the equipment of the engine or in its management The proof of such a fact makes out a *prima facie* case for the plaintiff. *Fitch v. Railroad*, 45 Mo. 322; *Kenney v. Railroad*, 70 Mo. 243; *Redmond v. Railroad*, 76 Mo. 550; *Wise v. Railroad*, 85 Mo. 178.

But the cases just cited are all essentially different from the one in hand. Here there is no direct evidence that fire escaped from these engines. That the escape of fire may be shown by circumstantial as well as direct evidence must be conceded. But the circumstances in evidence do not justify such a conclusion. The engines had not been within one hundred feet of the shed for an hour before the fire; they had not during that time been nearer than sixty feet to the cotton in the cars standing on the track. At the time the fire broke out, one engine was a mile from the cotton shed,

and the other one was three or four hundred feet southwest of it. Both engines were supplied with spark arresters, and the wind was from the west according to all the evidence. We hold that the circumstances in evidence do not justify the conclusion that this bale of cotton took fire by reason of sparks from the engines.

There is, however, an abundance of evidence to support a finding that the fire arose from negligence of the compress company. According to the testimony of Mr. Downer, the superintendent and checking clerk carried lighted cigars in the shed and on the platform, and smoked in the office. He saw one negro with matches behind his ear. Such conduct with combustible material on all hands and under the feet of these employes must be characterized as gross negligence. The evidence of this witness being true, the wonder is that this concern stood for six weeks; that was the epriod of its life.

But we are here met with the argument that there is no evidence to show that this fire originated from any particular negligent act of any of these servants of the compress company, and that there is no evidence of negligence causing this particular fire, save the mere fact that the fire occurred. Speaking of the maxim, that the affair speaks for itself, it is said by reliable authors: "It is not that, in any case, negligence can be assumed from the mere fact of the accident and an injury; but, in these cases, the surrounding circumstances which are necessarily brought into view, of showing how the accident occurred, contain, without further proof, sufficient evidence of the defendant's duty, and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to

offer.    The accident, the injury and the circumstances under which they occur are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault.''    1 Shearman & Redfield on Negligence, [4 Ed.] sec. 59.    The circumstances attending the injury may, and often do, make out a *prima facie* case for the plaintiff.    *Witting v. Railroad*, 101 Mo. 631.

The plaintiff's case does not stand on mere proof that the cotton was destroyed by fire.    To that fact is added proof of careless conduct in the use of fire by those who managed the affairs of the concern, and that too on the very day that the fire occurred.    With such additional proof the conclusion that the fire occurred from negligence of the compress people is a natural, just and reasonable one.

3.    The next question is whether the defendant is liable to plaintiff for the negligence of the compress company.    By the bill of lading the defendant reserved to itself the privilege of compressing the cotton.    The contention that this reservation was made for the benefit of the plaintiff, and that the compress company should be deemed the agent of the plaintiff, cannot be sustained.    The defendant received the cotton, and guaranteed a stated through rate.    In doing so it made this reservation, to which the shipper consented. The defendant did not agree to have the cotton compressed.    It simply secured the right to do so if deemed best for its own interest.    The very form in which we find this agreement stated is enough to show that the reservation was one for the benefit of the carrier.    The fact that it may have formed an element in the freight rates guaranteed is immaterial.    The defendant received the cotton for shipment in its bulky form, and the reduction of it in bulk was a mere incident to its transportation—a thing done to facilitate the shipment.    In

placing the cotton in the hands of the compress company, the defendant made that company its agent, and for the negligence of that agent it is liable, the same as for its own negligence. Many words can add nothing to what has been said.

4. Error is assigned in the refusal of the court to give the defendant's fourth instruction. This instruction asserts the proposition that it was incumbent on the plaintiff, in order to avoid the exception in the bill of lading as to loss by fire, "to show that the fire was the result of the defendant's negligence." It having been agreed that the loss occurred from a cause excepted in the bill of lading, the plaintiff could only recover by showing that the fire was the result of negligence, and the burden of proof of this issue rested upon it. *Witting v. Railroad*, 101 Mo. 631. The instruction was properly refused, however, because it excludes a liability for the negligence of the compress company. This must have been its purpose. In the instruction given, the court did throw the burden of the issue of negligence upon the plaintiff.

It follows from what has been said that the judgment should be and it is affirmed. All concur.