## CHARLES W. LAY, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, May 15, 1911.

1. **CARRIERS OF LIVE STOCK: Jurisdiction: County of Suit: Several Liability.** In a suit to recover damages by reason of the negligence of the connecting carrier in failing to deliver cattle on the Chicago market within a reasonable time, the connecting carrier pleaded want of jurisdiction because its railroad did not pass through the county in which suit was instituted, and because it was served in another county. *Held*, that section 5446, R. S. 1909, provides that the suit may be brought in any county in the state where process may be served, and the fact that there was no joint liability between the connecting carrier and the initial carrier (which was in county of suit) cannot affect the question of jurisdiction, as the statute by its terms provides for recovery on the ground of the separate liability of the connecting carrier.

2. **EVIDENCE: Witnesses: Market Prices.** In an action for damages for unreasonable delay in delivery of live stock, plaintiff testified that he knew what the market prices were on particular days, and that he had had twenty years experience in buying and selling cattle. He was not cross-examined as to his qualification to testify as an expert. *Held*, that the admission of this evidence was not erroneous.

3. ———: **Witnesses: Refreshing Memory: Trade Journal.** A witness who had been engaged for many years in the live-stock commission business was allowed to refresh his memory by reference to the "Drover's Journal," a publication that recorded the daily sales of cattle and other stock on the market. *Held*, that it is competent for a witness to thus refresh his memory.

4. **CARRIERS OF LIVE STOCK: Negligence: Proof of Delay in Transportation.** Where the plaintiff seeks to recover upon the ground of negligent delay in transporting his cattle to market, he is not entitled to recover by merely showing that there was delay, but must go further, and show that the delay was caused by negligence, although slight evidence of negligence is sufficient.

5. ———: ———: **Duty to Carry with Reasonable Despatch.** Although a carrier of live stock is under no obligation to transport a shipper's cattle for any special market or by the

utmost despatch, it is bound to carry them by some train in such time as would cause their arrival within a reasonable time.

6. ———: ———: **Proof.** Where defendant contends that, even admitting that there was negligent delay, in any event the cattle would not have reached their destination in time for a certain market, and that therefore plaintiff was not injured, and, as proof thereof submits the schedule time of the train in question, *held*, that defendant must go further, and show that it had no other scheduled or unscheduled trains than the ones shown by which plaintiff's cattle could have reached the market on time.

Appeal from Howard Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*O. M. Spencer, H. J. Nelson* and *W. J. Allen* for appellant.

*W. M. Williams* and *Sam C. Major* for respondent.

BROADDUS, P. J.—This suit was instituted in Howard county, Missouri, against the appellant and the Missouri, Kansas and Texas Railroad Company. The action is to recover damages by reason of the negligence of the defendants in failing to deliver cattle on the Chicago market within a reasonable time. The damages alleged are for loss on account of decline in the market; excess shrinkage, depreciation in value and for extra feed.

Before shipment, plaintiff notified the Misouri, Kansas and Texas Railroad Company that he would ship his cattle from Burton, Howard county, Missouri, a station on its road, about eighty-seven miles from Hannibal, on the 26th of September, 1908, and drove them to said station on the evening of that day. The latter company notified the appellant that the cattle would reach Hannibal on the next day, the 27th of September, which notice appellant received about noon on the 26th, the day it was given. The cattle were loaded on the morning of the 27th,

and delivered to the carrier about 9:30 a.m., and they reached Hannibal at 2:45 p. m. of that day  At 2:20 p. m. they were delivered to appellant. The distance from Hannibal to Quincy on the route is twenty miles, but the cattle did not arrive there until about one o'clock the next morning.  The delay in getting the cattle from Hannibal to Quincy was partly occasioned by the fact that no regular freight train passed through Palmyra, a junction of the road between the two points, until 11:55 p. m. They were taken by an extra coming from the west and passing through Palmyra and arrived at  Quincy as stated about one o'clock a. m.   They started from Quincy at about 6 a. m. and arrived at Galesburg, a distance of one hundred miles, the next morning at 11:45 o'clock. The evidence tended to show that the delay in making the one hundred miles was caused by the bursting of an air hose, pulling out of draw heads, the breaking of draft timbers, the jerking and pulling of the train.   The evidence of appellant tended to show that there had been proper inspection. The train contained fifty loaded cars and it required two engines to propel it. When the train arrived at Galesburg the cattle were unloaded and remained there for eight hours, when they were reloaded and arrived in Chicago at the chutes at 7:09 p. m. on the 29th.

Had there been no delay the cattle should have reached Chicago for Monday's market, the 28th of September.   It was shown that from nineteen  to  twenty hours would have been a reasonable time for the cattle to have gone from Hannibal to Chicago.  Plaintiff's evidence tended to show that there was no market for the cattle on the day of their arrival, consequently, they were kept over and sold on the next day's market; that there had been a decline in prices from the day on which cattle should have arrived and the day on which they were sold; that there had been an extra shrinkage by reason of the delay; that their grade had been lowered thereby and their value lessened; and that respondent had also been put to extra cost for feed.

Respondent was permitted to testify as to the prices of cattle on the Chicago market over the objections of defendant. He was asked if he knew what the market prices were on particular days, to which he answered in the affirmative. It was shown that he had had twenty years experience in shipping and selling cattle on the market. There was no cross-examination as to his qualification to testify as an expert.

Objection was made and overruled as to the evidence of a witness by the name of Bowles, who had been engaged for many years in the commission business in selling animals on the market. He was allowed to refresh his memory by reference to the *Drover's Journal,* a publication that recorded the daily sales of cattle and other stock on the market. At the close of plaintiff's evidence the defendant interposed a demurrer to his right to recover, which was overruled by the court.

Defendant's evidence was to the effect that there were two regular scheduled freight trains from Hannibal by which the cattle could be shipped to Quincy. One was due to leave Hannibal at 2:20 a. m. and the other at 11:25 a.m., so that there was no regular scheduled train from Hannibal by which plaintiff's stock could have been transported prior to 2:20 a. m. Monday, September the 28th, the next day; that consequently an extra was ordered to run from Hannibal to Palmyra which carried plaintiff's cattle to that point and connected them with the train going to Quincy. That just before the train passed out of the yards at Quincy, an air hose bursted, which resulted in pulling out a draw bar and other damage; that after some further delay, caused by meeting trains, taking coal and other things incident to the ordinary run of a freight train, it arrived at Galesburg at 11:45 a. m., Monday, September 28th, where the cattle were taken out, fed and watered. A witness for the defendant testified that the bursting of the air hose was caused by a sudden application of the air, which caused a jerk that pulled out the draw bar; that an air hose on a freight

train, frequently, for some unknown reason, bursts; that the brakeman inspected the hose and it was found to be in proper condition; that the train was in a proper condition before it left, and that there was no jerking.

The defendant offered a list of its schedule of trains leaving Galesburg for Chicago which showed that notwithstanding the delay between Hannibal and Chicago the cattle would not have reached Chicago in time for Monday's market had there been no such delay. But the chief dispatcher of appellant who testified for appellant, on cross-examination stated; that the company frequently ran unscheduled trains east out of Galesburg on an average of eight or ten a day; and that on some days there would be as many unscheduled as scheduled trains sent out. The witness did not produce the schedule sheets from midnight of the 27th to midnight of the 28th.

The appellant's railroad did not pass through Howard county and touched it at no point; and that it had no place of business in that county; and that summons was served on it in Buchanan county, where it had such place of business. The petition alleges that defendants were common carriers; and that their railroads connected; and that they were jointly engaged in the transportation of freight between the place of shipment and Chicago.

The appellant pleaded want of jurisdiction in the Howard county court in bar, and also answered by general denial of the allegations of the petition. The verdict and judgment were for plaintiff from which the defendant appealed.

Appellant insists that the court erred in failing to sustain its plea for want of jurisdiction. By section 5446, R. S. 1909, it is: "Provided, that in any suit to recover for any loss, damage or injury to property transported by a common carrier and one or more connecting carriers, the plaintiff may join as defendants the original carrier and all connecting carriers, and shall be entitled to recover in such action from the common

carrier, railroad or transportation company, through whose negligence any loss, damage or injury to such property was sustained, the amount of such loss, damage or injury, with all costs of suit, and may prosecute such action in any county in the state in which, as is provided by law, a suit may be maintained against either of such common carriers." Appellant's contention that there was no joint liability cannot affect the question, as the statute by its terms provides for recovery on the ground of the separate liability of a connecting carrier, and that the suit may be brought in any county in the state where process may be served, as provided by statute, on railroad corporations.

The admission of the evidence of respondent as to his knowledge of market prices was not erroneous. He testified that he knew the market value of cattle. He was not asked upon what he based his knowledge. We will presume from the fact of his long experience in the business of shipping and selling cattle and being present at the time, that he would naturally make himself familiar with prices. Any sane person would do so, and nothing being shown to the contrary, he was a competent witness, and the weight of his testimony was a matter to be determined by the jury.

And it was certainly competent for the witness Bowles to refresh his memory by reference to the *Drover's Journal* which was kept by him for that express purpose. His testimony was not a mere repetition of what the journal contained as was the case in Henderson v. Railroad Co., 126 Mo. App. 610, where such evidence was held to be incompetent. If appellant's theory of the law be correct it would be an impossibility for any witness who may have been cognizant of the market prices of stock on the Chicago daily market to testify six months later what the market price was on a given day. But the law is otherwise. Such publications as the *Drover's Journal* are made for the express purpose of keeping a record and notifying the public of the transactions on

.the market and are received by the mercantile world as evidence of such transactions, and we can see no good reason, being reasonably correct, that they should not be referred to for the purpose of refreshing the memory of those who were engaged at the time in buying or selling on the market. Especially this should be so as they are kept for that express purpose by those who rely on them for a correct recital of the transactions of each day's market. A journal of the kind could not exist more than a day that did not correctly publish sales as they were actually made. This court in an opinion by JOHNSON, J. said: "A witness's opinion of the market value of a commodity is expert evidence and is only advisory; and if a witness is versed in the trade and his information comes through general avenues to which the average business man resorts to guide his sales and purchases by, he is qualified to testify and the jury shall determine the weight of his evidence." [Fountain v. Wabash Ry. Co., 114 Mo. 676.]

As the respondent seeks to recover upon the ground of negligent delay in transporting his cattle to market, he is not entitled to recover by merely showing there was delay, he must go further and show that the delay was caused by negligence. [Decker v. Mo. Pac. Ry. Co., 131 S. W. 118; Standard Milling Co. v. Transit Co., 122 Mo. 258; Gillespie v. Railroad Co., 144 Mo. App. 508; Ecton v. Railroad, 125 Mo. App. 223; and other cases.]

It is held that it was "enough for the plaintiff to disclose circumstances sufficient to raise a fair inference of negligence." [Witting v. Railroad, 101 Mo. 631; Otis v. Railroad, 112 Mo. 622.] In Anderson v. Ry. Co., 93 Mo. App. 677, plaintiff showed: "That he shipped the cattle at eleven o'clock a. m. on the thirteenth at Marceline, and that they arrived at eleven o'clock a. m. the next day. That from thirteen to fifteen hours was the usual time for the transportation between the two points. That delays occurred at more than one point of from two to four hours, and that other trains going toward Chicago

passed them while thus delayed. We regard this as sufficient to raise a presumption of negligence." Slight evidence of negligence is sufficient to support a finding that delay in transportation was unreasonable. [Fulbright v. Railroad, 118 Mo. App. l. c. 486; Wright v. Railroad Co., 118 Mo. App. 392.]

Although appellant was under no obligation to transport respondent's cattle to Chicago from Hannibal for any special market or by the utmost despatch, yet it was bound to carry them by some train in such time as would require the arrival within a reasonable time. We believe there was evidence tending to show that appellant failed to perform its duty in that respect. Plaintiff's evidence tended to show that there was an unreasonable delay in transporting the cattle from Hannibal to Palmyra. The evidence also tended to show on the part of the plaintiff that the train from Quincy to Galesburg was overloaded, as it required two engines to propel it, and that that was explanatory of its slow movement on its passage; and that it also accounted for the jerking that was noticed. Notwithstanding defendant's brakemen made an inspection of the air brake and the train before it started, the evidence tends to show that if everything had been in good working order the train would have made the trip in the usual time. The jury was not bound to accept the evidence of defendant's witnesses in accounting for the mishap to the brakes or their other explanations accounting for the unusual delay on the route. The fact that the train suffered a mishap before it got out of the railroad yards at Quincy indicated that there was some neglect of duty in failing to discover and rectify defects in the equipment of the train.

It is contended that notwithstanding there may have been negligent delay the cattle would not have reached their destination in time for Monday's market, therefore, respondent was not injured thereby. It is held that: "Stopping a shipment of cattle to feed them in compliance with the interstate commerce act excuses

delay in delivery caused thereby; but if negligent delay causes the unloading of the cattle to comply with said law then it would not excuse." [Ecton v. Ry. Co., supra.] The cattle in question if they had been transported with the usual despatch could have reached their destination before they did on the schedule time, whereas the cattle under the Federal Statute were not required to be unloaded until the expiration of thirty-six hours, an excess over such schedule time. It will thus be seen that a delay of ten hours, if it was negligent, does not excuse appellant by reason of the fact that it was compelled to unload for the purpose of feeding the cattle at Galesburg.

It is insisted that the schedule time of the train in question from Quincy to Chicago could not have carried respondent's cattle to Chicago until 3:55 p. m. Monday, too late for that day's market. This is true, but the evidence of the chief dispatcher testifying as to the numerous unscheduled trains that did go out of Galesburg, and his failure to produce all the schedule sheets including the time in which the cattle may have been carried tends to discredit the conclusiveness of the schedule sheets that were actually produced in evidence. It is not denied that if there had been a prompt shipment from Galesburg the cattle would have arrived in the usual course of time for Monday's market. In view of the fact that there had been unusual delay it behooved appellant to have made every reasonable effort to have got the cattle to market as soon as possible. And the jury might fairly presume that appellant might have done so by some of its numerous trains that left Galesburg daily.

Under the circumstances the appellant should have gone further and proved that it had no other scheduled or unscheduled trains than the ones shown by which the cattle could have reached the market on time.

Appellant raises other questions which we shall not discuss as we do not deem them necessary for a proper decision of the case.

Affirmed. All concur.