## ST. LOUIS & S. F. RY. CO. v. KNOX.

(Court of Civil Appeals of Texas. Texarkana. Nov. 15, 1912. Rehearing Denied Nov. 28, 1912.)

1. EVIDENCE (§§ 538, 544*) — OPINION EVIDENCE—EXPERTS.

Cattlemen, who for a number of years had been engaged in shipping and marketing stock to a given point, and were acquainted with the market reports and prices at the time the shipment was made, are competent to testify as experts whether or not it was necessary to feed and water cattle at a given point, and whether depreciation in price and loss in weight was due to rough handling and delay.

[Ed. Note.—For other cases, see Evidence, Cent.Dig. §§ 2348, 2356; Dec. Dig. §§ 538, 544.*]

2. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a railroad company for injuries to a shipment of cattle from delay, a charge that if the cattle were fed and watered at a certain point, and it was made necessary by the negligence of defendant in delaying the cattle, if it did delay them, then plaintiff, if he paid for feeding the cattle, would be entitled to recover the sum paid, is not erroneous as on the weight of the evidence in telling the jury that the delay in transporta-

tion was caused by the negligence of the defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

3. CARRIERS (§ 229*) — CARRIAGE OF LIVE STOCK—INJURY TO ANIMALS—MEASURE OF DAMAGES.

Where a common carrier of live stock delayed a shipment so as to injure them, the shipper's measure of damages is the difference between the market value of the stock at the time they arrived at the point of consignment and what would have been their market value had they arrived without delay.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

4. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a railroad company for negligent delay in shipment of cattle, an instruction that, if there was a finding for the shipper, then the measure of his damages is the difference between the market value, if any, of the cattle at the time of arrival in the condition they were in and what would have been their market value, had there been no delay or negligence, is not erroneous as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS COVERED BY CHARGES GIVEN.

In an action against a railroad company for damages to cattle in shipment, occasioned by its negligent delay, where the court repeatedly told the jury that plaintiff could not recover anything, unless the company had been guilty of negligence, a request that the plaintiff cannot recover, unless defendant was negligent, and that such negligence was the proximate cause of the injury to the cattle, being covered by the charges given, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Jack County; J. W. Patterson, Judge.

Action by S. W. Knox against the St. Louis & San Francisco Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Stark & Stark, of Jacksboro, and Andrews, Ball & Streeman, of Ft. Worth, for appellant. Sporer & McClure, of Jacksboro, for appellee.

WILLSON, C. J. January 29, 1909, appellee delivered to the Chicago, Rock Island & Gulf Railway Company 141 head of steers, to be transported by said company and its connecting lines from Jacksboro, Tex., to the National Stockyards in East St. Louis, Ill. Appellee accompanied the cattle, and at the time he delivered them to said railway company, in a writing separate from the bill of lading covering them, waived the requirement of the federal statute (Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [U. S. Comp. St. Supp. 1911, p. 1341]) that they should not be confined in the cars for a longer period than 28 hours without unloading, feeding, and watering them, and agreed that such time of

confinement might be extended to 36 hours. The cattle left Jacksboro over said railway company's line at 4:30 p. m. of said January 29th, and reached Chickasha, where they were delivered to appellant for transportation to their destination over its line of railway, at 4:30 o'clock of the morning of January 30th. At Chickasha appellee surrendered to appellant the bill of lading issued to him by the Chicago, Rock Island & Gulf Railway Company, and the waiver referred to, and received from appellant its bill of lading covering the transportation of the cattle on to St. Louis. The cattle left Chickasha, over appellant's line of railway, at about 5:10 o'clock of said morning of January 30th, and reached Sapulpa at 3:50 o'clock of the afternoon of that day. At Sapulpa they were detained about 11 hours, during which time they were unloaded, fed, and watered. There was testimony authorizing a finding that the cattle were roughly handled at this point, and that because of negligence on the part of appellant they were delayed there longer than was necessary to comply with the requirements of the federal statute referred to. The cattle left Sapulpa at 2:30 o'clock of the morning of January 31st, were then carried to Afton, where they were detained 2½ hours, when they were carried to Monett, where they were detained 1 hour, then to Springfield, where they were detained 1 hour and 15 minutes, and then to Newberg, a point 117 miles south of St. Louis. They reached Newberg at 2:10 o'clock on the morning of February 1st, having then been confined in the cars, after leaving Sapulpa, 23 hours and 40 minutes. At Newberg, over appellee's protest, they were detained 7 hours and 20 minutes, during which time they were unloaded, fed, and watered. For the feeding and watering of the cattle at that point, appellee was compelled to pay $21. There was testimony authorizing a finding by the jury that the pens into which the cattle were unloaded at Newberg were in such a condition as to cause injury to them. The cattle left Newberg at 9:30 o'clock of the morning of February 1st, reached St. Louis at 4:30 o'clock of the afternoon of that day, and the National Stockyards in East St. Louis at 6:30 o'clock of the same afternoon. It was shown that the usual running time of trains carrying live stock between Newberg and St. Louis was from 30 to 40 miles an hour. Appellee's contention, supported, we think, by testimony, was that the delays mentioned were due to negligence on the part of appellant; that as a result thereof the cattle did not reach their destination in time to be sold on February 1st, but had to be sold on February 2d, when the market price had declined; that the market price of the cattle was injuriously affected by the condition the cattle were in on account of negligence of appellant in handling them; and that they had lost in weight, on account of such delays and rough handling, about 70 pounds each more than they otherwise would have lost. He sued for $1,465.96 as his damages, and recovered a judgment for $950.

[1] In the first 18 assignments complaint is made of the action of the court in admitting, over appellant's objection thereto on the ground, in some instances, that the witnesses had not qualified as experts, and in others that same was their opinions on mixed questions of law and fact, testimony that it was not necessary to feed and water the cattle at Newberg; that but for the delays and rough handling the cattle would have reached their destination in good condition for the market of February 1st; that on that day they could have been sold for 6 cents a pound, whereas on February 2d the market had declined, and they could be sold for only 5.54½ cents a pound; that the cattle had lost in weight about 70 pounds each more than they would have lost but for the delays and rough handling they were subjected to; that the cattle would have sold for from 25 to 45 cents a hundred pounds more than they did sell for if they had been in good condition, etc. It appeared that the witnesses who gave the testimony objected to were experienced cattlemen, and for a number of years had engaged in shipping and marketing such stock; that they accompanied the cattle while they were being transported from Jacksboro to the National Stockyards, and from inquiries made and market reports examined were acquainted with the prices of such cattle on that market at that time. We think the admission of the testimony does not furnish a reason for reversing the judgment. Railway Co. v. Allen, 117 S. W. 923; Railway Co. v. Henson, 56 Tex. Civ. App. 468, 121 S. W. 1128; Railway Co. v. Irvine, 73 S. W. 540; Railway Co. v. Scoggin, 57 Tex. Civ. App. 349, 123 S. W. 229; Railway Co. v. Crowley, 86 S. W. 342; Railway Co. v. Gober, 125 S. W. 383; Railway Co. v. Halsell, 35 Tex. Civ. App. 126, 80 S. W. 140; Railway Co. v. White, 35 Tex. Civ. App. 521, 80 S. W. 641; Railway Co. v. Gray, 145 S. W. 729; Railway Co. v. Saunders, 141 S. W. 829; Railway Co. v. Jones, 118 S. W. 759; Lay v. Railway Co., 157 Mo. App. 467, 138 S. W. 884.

[2] It is insisted that the trial court, in the third paragraph of his charge, told the jury that the delay in the transportation of the cattle shown to have occurred was due to negligence on the part of appellant, and that therefore that portion of the charge was erroneous because on the weight of the evidence. As we understand the language used, the court did not so instruct the jury. On the contrary, he told them appellee was not entitled to recover the sum he paid on account of the feeding and watering of the cattle at Newberg, unless such feeding and watering "was made necessary by the negligence of defendant in delaying the cattle after it received them, if it did so delay them." Said paragraph of the charge was as fol-

lows: "If you believe and find from the evidence that the cattle were fed and watered at Newberg, Missouri, and if you believe said watering and feeding was necessary, as hereinafter explained, and if you believe that said feeding and watering was made necessary by the negligence of the defendant in delaying said cattle after it received them, if it did so delay said cattle, and if you believe plaintiff paid for feeding said cattle, and if you believe it was necessary for him to pay for same under his contract, he would be entitled to recover the sum he so paid, provided you believe the sum was reasonable; or if you find it was not necessary or required to so feed and water said cattle at Newberg, and that same was done without the consent of plaintiff, and that the plaintiff was compelled to pay therefor, he would be entitled to recover therefor the reasonable value thereof."

[3, 4] The eighth paragraph of the charge also is attacked as erroneous because on the weight of the evidence, and on the ground that it "did not correctly state the law of the case." While not as clear as it should have been in the statement of the measure of the damages recoverable, we think the measure was not incorrectly stated; and certainly the instruction was not on the weight of the evidence. It was as follows: "If you find for the plaintiff by reason of injury to his cattle, then the measure of his damages is the difference between the market value, if any, of the cattle at the time they arrived at the National Stockyards in Illinois in the condition they were in and what would have been their market value at the time they should have arrived there, had there been no delay caused by the negligence of said defendant, if there was such delay and negligence, and the condition they should and would have been in had there been no such delay or negligence."

• Appellant next insists that "there was no evidence that plaintiff's cattle sold for less, nor that their market value was less, when they reached their destination in the condition they were then in than it would have been had they reached the market or destination in ordinary time and condition," and complains of the action of the court in refusing to give to the jury a special charge to that effect requested by it. The testimony was that the market value of such cattle on February 1st, when the steers should have reached said National Stockyards, was 6 cents a pound, and that on February 2d, when they reached said stockyards and were sold, the market had declined to 5.54½ cents a pound. The testimony, further, was that on account of the rough handling the cattle were subjected to and the delay in transporting them each of the steers had lost 70 pounds more in weight than it otherwise would have lost.

[5] Finally, it is insisted that the court erred in refusing a charge requested by appellant as follows: "Before the plaintiff can recover in this case, you must find and believe from the evidence that the defendant was negligent in the said shipment; that the plaintiff received some injury to his cattle; that the negligence of the defendant was the proximate cause of such injury; and the evidence must show that the negligence of the defendant was the direct and proximate cause of such injury." The contention is that it was error to refuse this charge, because in his main charge the court "omitted to instruct the jury upon proximate cause." The court was careful to repeatedly tell the jury that appellee was not entitled to recover anything, unless appellant had been guilty of negligence in transporting the steers, and that he was entitled to recover, if at all, only such damages as were caused to him by appellant's negligence. We think the contention should be overruled.

There is no error in the judgment; and it is affirmed.