## J. V. WYATT, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Springfield Court of Appeals, July 28, 1913.

1. **CARRIERS: Transportation of Live Stock: Delay: Evidence of Negligence.** In an action against a railroad company for damages based on a delay in the shipment of a carload of mules, where no one accompanied the shipment and the cause of delay was wholly within the knowledge of the railroad company; where the evidence showed an unusual delay of 54 hours, that other trains were running over the tracks and no wrecks were visible; that the agents of the company, who were applied to at both ends of the line, did not know where the mules were and with a slight amount of evidence introduced to the effect that the shipment had been sidetracked at an intermediate point; *held*, that such facts were sufficient to raise a fair inference of negligence on the part of the railroad company and that even slight evidence of negligence was sufficient to support a finding that the delay in transportation was unreasonable.

2. ——: ——: ——: **Evidence Admissible.** In an action against a railroad company for damages caused by delay in the shipment of a carload of mules, all evidence tending to show the cost of placing the mules in a saleable condition, the costs and expenses of caring for them and thereby reducing the loss to a minimum and the cost of shipping back certain of the number which had lost their market value because of the delay, *held*, admissible not to fix the measure of damages but as evi-

dence from which the jury could draw inferences as to the
depreciated condition of the mules on their arrival at their
destination.

3. ———: **Contract of Shipment: Liability Lmited By: Instruc-
tions.** The contract for an interstate shipment of mules lim-
ited the loss to $100 per head and provided that in case of
injury or partial loss the amount of damages claimed should
not exceed the same proportions. *Held*, that in an action against
the carrier for delay in shipping, the court properly instructed
the jury that they must take the total value of the mules at
$100 per head, regardless of any greater value they may have
had and any damages which they received should be assessed
in the same proportion.

4. **EVIDENCE: Admissibility of.** In an action for delay in a
shipment of mules, the owner testified as to his loss of per-
sonal time occupied in looking after the mules, that his time
was worth $10 per day on the mule market, admitting on cross-
examination that he did not put in all his time caring for
them, but charged for each day as though he had. *Held*, that
the admission of the testimony over the objection that it was
incompetent, irrelevant and not a proper measure of damages,
was error.

Appeal from Jasper County Circuit Court, Division
No. Two.—*Hon. David E. Blair*, Judge.

AFFIRMED (Conditionally).

*R. T. Railey* and *A. E. Spencer* for appellant.

(1) Under the petition, and the position assumed
by the plaintiff at the trial as evidenced by the instruc-
tion asked by him, it devolved upon plaintiff to prove
that the delay in the shipment was proximately caused
by the negligence of the appellant, and as the evidence
does not so show, plaintiff, was not entitled to recover
and the court should have given the instruction re-
quested by the appellant, directing a verdict in appel-
lant's favor.   McDowell v. Railroad, 152 S. W. 435;
Ecton v. Railroad, 125 Mo. App. 223; Milling Co. v.
Transit Co., 122 Mo. 258-276; Wernick v. Railroad, 131
Mo. App. 52; Witting v. Railroad, 101 Mo. 631;

Bockserman v. Railroad, 152 S. W. 389. (2) The general rule as to the measure of damages in cases of this kind is the difference between the market price or value of the animals at the place of destination when the shipment should have arrived and when it did in fact arrive. To this may be added in a proper case an allowance for a loss in weight as well as for any physical injury resulting from the delay. 3 Joyce on Damages, sec. 1957, p. 2020; Gaun v. Railroad, 72 Mo. App. 34; Glasscock v. Railroad, 86 Mo. App. 119; Hendrix v. Railroad, 107 Mo. App. 127. (3) Evidence tending to show the expense of putting the stock in a marketable condition is admissible *only as throwing light upon its condition at the time of its arrival.* Matney v. Railroad, 75 Mo. App. 233. (4) In the present case, the court erred in permitting plaintiff, in addition to his showing along this line, to introduce as elements of his damage, testimony as to his expenses incurred in reshipping a portion of the mules from East St. Louis back to Webb City; also testimony as to the market value of these mules *at Webb City* thirty days after they reached East St. Louis. (5) It was error to permit plaintiff to testify as to his personal time occupied in looking after the mules, and that his time was worth $10 per day *on the market.* Under the cases cited, plaintiff could at most only show the expense of putting the animals in a marketable condition; and this only as tending to prove the ultimate fact of their condition when they reached destination. The value of plaintiff's personal time measured by his ability and earning power as a dealer on the market was not a proper test of this expense. Railroad v. DeWitt, 1 Colo. App. 419, 29 Pac. 524.

*H. L. Shannon* and *A. G. Young* for respondent.

(1) While it is true that a mere delay is not sufficient to raise a presumption of negligence, yet proof that there was an unreasonable delay is sufficient to raise

that presumption.   In addition to the proof of unrea-
sonable delay it was shown by the testimony of plain-
tiff that the track was clear and that there had been no
wrecks or accidents to cause delay, and by the.admis-
sions of defendant's employees that the mules were lost
in transportation.   Unionville Pro. Co. v. Railroad,
153 S. W. 63; Lay v. Railroad, 157 Mo. App. 473;
Fulbright v. Railroad, 118 Mo. App. 480; Wright v.
Railroad, 118 Mo. App. 392; Otis v. Railroad, 112 Mo.
App. 622; Witting v. Railroad, 101 Mo. 631; Anderson
v. Railroad, 93 Mo. App. 677.   (2)   What is a rea-
sonable time is a question of fact for the jury and
depends upon the circumstances of each case.   6 Cyc.
443; Davis v. Jackson, 126 Mo. 69; Schwab v. Union
Line, 13 Mo. App. 179.   (3)   There was also evidence
tending to show that the mules were sidetracked at
Tipton, Missouri, and this would be sufficient to show
negligence on the part of defendant.  ` Unionville Pro.
Co. v. Railroad, 153 S. W. 63.   (4)   Necessary ex-
penses incurred, such as in searching for the property,
or carrying insurance on it· after its arrival, may be
recovered.   6 Cyc. 45.   (5)   All the evidence ad-
mitted by the court was proper for the purpose of
enabling the jury to fix the value of the mules when
they arrived in St. Louis.   Matney v. Railroad, 75
Mo. App. 233; Glasscock v. Railroad, 86 Mo. App.
119.

FARRINGTON, J.—Plaintiff obtained judgment
for $509.50 as damages to twenty-three head of mules
belonging to him and which he shipped from Webb
City, Mo., to East St. Louis, Ill.   Defendant brings
its appeal to this court, alleging error in the refusal of
the trial court to give a peremptory instruction in its
behalf, and in the action of the court in admitting tes-
timony touching the handling and caring for the ani-
mals subsequent to their arrival in East St. Louis.

.The facts are that at about ten o'clock a. m., November 16, 1910, the defendant at its depot at Webb City received for shipment from plaintiff twenty-three head of mules, making one carload, and that they reached their destination—East St. Louis, Ill.—between three and four o'clock on November nineteenth after being about seventy-eight hours in transit. There is evidence on the part of the plaintiff showing that the usual time for such shipment is twenty-four hours. No one accompanied the carload of mules, but the plaintiff went to East St. Louis on the night of November seventeenth, arriving on Friday morning, the eighteenth. He testified that the condition of the track was good and that there were no wrecks that obstructed the track or traffic; and there was slight evidence that on the morning of the eighteenth plaintiff saw his carload of mules on a sidetrack at Tipton, Mo., a station on defendant's line. When plaintiff reached East St. Louis, his mules were not there, and on inquiring of the Missouri Pacific agent was told that his mules could not be found in East St. Louis and that he did not know where they were. Plaintiff then called the agent at Webb City by telephone and he likewise told plaintiff he did not know where the mules were, but said he would try and locate them. There is evidence to support a finding that the mules when they reached East St. Louis on Saturday afternoon were in a run-down, stiff and guant condition; that they were in an unsaleable condition and not worth over fifty or sixty dollars each. The plaintiff testified that he was a stock man and had been handling stock at frequent intervals in East St. Louis for the past ten or twelve years; that he knew what the market price for the kind of mules he had shipped was on Friday, the eighteenth, which was the day on which his mules would have been offered for sale had they reached their destination in the usual time. The evidence shows that plaintiff notified defendant's agent at East St.

Louis of the time the mules arrived and informed him
of the condition they were in on arrival. There is evi-
dence showing that as the mules arrived on Saturday
afternoon between three and four o'clock, it was im-
possible for plaintiff to place them on the market be-
fore the following Monday, and that on that date, ow-
ing to their run-down and weakened condition, he was
unable to get any bids or to make any sale. There is
also substantial testimony to the effect that the mules
when shipped from Webb City were good, fat animals,
in good, saleable condition, and plaintiff testified that
if they had been carried to East St. Louis in the usual
time, there was a good market for this class of mules
and that the market price on such mules was from one
hundred seventy-five to one hundred eighty dollars
per head—that this was their market value in East St.
Louis, Ill., on Friday morning, November the eigh-
teenth. Plaintiff kept the mules in East St. Louis for
ten days and fed them at an expense of eighty-six dol-
lars, and during this time sold fourteen of them for
about one hundred fifty-five dollars per head. The
remaining nine were in such condition after having
been kept there ten days that they had no market value
at that place. Plaintiff shipped them back to Webb
City where he kept them and fed them and put them
in condition for sale and finally sold them for about
one hundred sixty-seven dollars per head.

The court, over defendant's objection, admitted
evidence as to the expense of shipping the mules back
to Webb City. The admissibility of this evidence
becomes apparent in view of the fact that there was
testimony to the effect that these nine mules could not
be sold in East St. Louis, and by shipping them back to
Webb City, and after getting them restored, was pos-
sibly the cheapest way out of the loss; and to make the
loss as small as possible was the duty imposed upon the
plaintiff. [13 Cyc. 78.—]

Testimony as to the condition the mules were in after they were returned to Webb City was also objected to by the defendant, and likewise as to evidence concerning the amount expended on them after they reached Webb City. While it is true that the measure of damages was the difference between the value of the mules on their arrival in East St. Louis in their weakened condition, and the value of the mules had they reached East St. Louis in the usual time, still such testimony as was admitted, while it would not fix the measure of damages, was certainly an element from which the jury could reasonably infer what the value of the mules was when they reached East St. Louis, and was as admissible for that purpose as was the testimony of witnesses to show the condition of the mules before they were shipped from Webb City as tending to show the condition they would have been in had they reached their destination in the usual time.

Appellant contends that in a suit charging negligence on the part of the defendant, mere proof of delay is no evidence of negligence, and cases cited in appellant's brief uphold this theory. However, in this case, where no one accompanied the mules, and because of the delay being wholly within the knowledge of the railroad company, coupled with evidence of the unusual delay of fifty-four hours—with evidence to the effect that other trains were running over the track—that no wrecks or obstructions were visible—with slight evidence of the mules having been sidetracked at Tipton—that the agents of the company who were applied to at both ends of the line did not know where the mules were—certainly brings this case within the rule laid down in other cases in this State that in such a shipment and with such an unusual delay, only slight evidence of negligence is sufficient to support a finding that the delay in transportation was unreasonable. Such facts as detailed are sufficient to raise a fair inference of negligence—which is enough. See, Lay v.

Railroad, 157 Mo. App. 467, 138 S. W. 884; Witting v. Railroad, 101 Mo. 631, 14 S. W. 743; The Otis Co. v. Railway Co., 112 Mo. 622, 20 S. W. 676; Fulbright v. Railroad, 118 Mo. App. 1. c. 486, 94 S. W. 992; Wright v. Railroad, 118 Mo. App. 392, 94 S. W. 555; and the recent case of Muir v. Railway Co., 154 S. W. 877, where the Kansas City Court of Appeals, speaking through TRIMBLE, J., used this language: "In this case no specific *acts* of negligence are alleged or shown. But the question is: Has the delay been shown, with such circumstances and under such surroundings as to raise the inference that the delay had its origin in negligence? From the very nature of the relation of carrier and shipper, circumstances that even slightly tend to show this are sufficient, especially where the knowledge of what caused the delay is with the carrier and not the shipper." In that case the defendant stood on a demurrer to the evidence and offered no explanation for the unreasonable delay. So, in this case, while the defendant did offer some testimony, it made no attempt to explain the delay of fifty-four hours. We therefore hold that sufficient facts and circumstances are shown from which the jury could reasonably infer negligence.

All the evidence which tended to show the cost of placing the mules in a saleable condition and the costs and expenses of caring for them and thereby reducing the loss to the minimum was admissible, not to fix the measure of damages, but as evidence from which the jury could draw inferences as to the depreciated condition of the mules on their arrival in East St. Louis. [See, Matney v. Railway Co., 75 Mo. App. 233.) In this connection it is observed that neither side asked an instruction fixing the measure of damages.

The contract for the shipment of these mules, in consideration of a reduced freight rate, limited the loss to one hundred dollars per head and provided that in case of injury or partial loss the amount of damage claimed should not exceed the same proportions. The court

in an instruction, after reciting this provision of the contract of affreightment, told the jury that if they found the issues in favor of the plaintiff, they must take the total value of the mules at one hundred dollars per head, regardless of any greater value they may have had, and then must assess the damage to them, if any, in the same proportions only.    This being an interstate shipment, the court properly limited the loss to that extent, as such contracts in interstate shipments have been recently upheld by the Supreme Court of the United States.    [Missouri, Kansas & Texas Ry. Co. v. Harriman Brothers (decided March 10, 1913; reported in Advance Sheets of April 1, 1913, at page 397); Kansas City Southern Ry. Co. v. Carl (decided March 10, 1913; reported in Advance Sheets of April 1, 1913, at page 391).]

There was some testimony introduced by the defendant to the effect that the plaintiff had stated his claim prior to bringing suit and had put his loss on the mules at five dollars per head.    Plaintiff explains this by saying that he told the agent at Webb City when he was preparing a claim for the purpose of making a settlement with the railroad company that the price he received for the mules was five dollars less on each mule than the price he had originally paid for them, but he explained that this five dollars did not cover the profit due him on the mules and which he would have received had they reached their destination on time.

The appellant complains of the action of the court in permitting the plaintiff to testify as to his personal time occupied in looking after the mules—that his time was worth ten dollars per day on the market. This assignment of error we consider well taken, as plaintiff, at most, should be permitted to show the expense of putting the animals in a marketable condition and this only as tending to prove the ultimate fact of their condition when they reached their destination. If it required a man's time to place them in a market-

able condition, the plaintiff should be allowed only such compensation as a man would command who was merely competent to do that particular work, and his time should not be valued according to what the plaintiff could make on the market. The character of plaintiff's testimony in this connection and the form of the objection made is best disclosed by the record. During the examination of the plaintiff in chief, the following occurred: "Q. What was the reasonable market value of those mules at that time had they been in good condition? Mr. Spencer: We object as incompetent and irrelevant and not a proper measure of damage, their reasonable value at the time he sold them forty days after. The Court: It is a question of what he could get for them in the condition they were. It is immaterial what their value was on the day he sold them. Q. What did you get for the fourteen mules you sold in St. Louis? Mr. Spencer: Same objection. The Court: Overruled. Mr. Spencer: Except. A. One hundred fifty-five dollars a head. Q. Now I will ask you to state how much time, if any, you lost in caring for these mules all of this time? Mr. Spencer: Same objection. The Court: His own personal time? Mr. Young: Yes, sir; his own time. The Court: Overruled. Mr. Spencer: Except. Q. State how much time you lost? A. About twenty days. Q. State what your time was worth? Mr. Spencer: Same objection. The Court: Overruled. Mr. Spencer: Except. A. Ten dollars a day on the market."

The objection clearly was that such evidence was incompetent and irrelevant and not a proper measure of damages; and there was manifestly no attempt to mislead or trap the court in any way, the purpose and theory of the objection being clearly understood by the court and attorneys. On cross-examination, the plaintiff testified as follows: "Q. You were conducting your livery business all the time after you came back? A. Yes, sir; most of the time. Q. You didn't give

up your business on account of these mules? A. No. I had to see them quite a little. Q. How much did you devote every day? A. ' I am like you lawyers, I don't put in much time. Q. How much time? A. I saw them every day. Q. They took very little of your time? A. Well, I hired a man. Q. And so it took almost none of your time? A. No, I charge for my time whether I done anything or not. Q. You make your ten dollar charge whether you did anything or not, is that the idea? A. Yes, sir. Q. That is the way you get this charge of ten dollars a day is it? A. I could get that on the market and more too. Q. If you were lucky trading? A. I am fairly lucky. Q. If you were lucky you would make it and if unlucky, you would take your loss? A. I always feel lucky."

Permitting plaintiff to testify that his time was worth ten dollars per day and that he put in twenty days was manifest error. The judgment will be allowed to stand only upon condition that respondent within ten days from the date on which this opinion is filed enter a written remittitur with the clerk of this court of two hundred dollars of the judgment; otherwise, the judgment will be reversed and the cause remanded for a new trial. *Sturgis, J.*, concurs. *Robertson, P. J.*, dissents as to that part of the foregoing opinion which requires the plaintiff to remit two hundred dollars of the judgment.